UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

LYNNAE LAKE,                          )
                                      )
                    Plaintiff,        )        Case No. 1:07-cv-572
                                      )
v.                                    )        Honorable Robert Holmes Bell
                                      )
JENNIFER GRANHOLM, et al.,            )
                                      )        **REPORT AND RECOMMENDATION**
                    Defendants.       )
_____)

        This is a civil action brought by a *pro se* plaintiff pursuant to 42 U.S.C. § 1983.
Plaintiff's complaint, filed on June 15, 2007, alleges that on December 7, 2003, the Michigan
Department of Human Services (DHS) began an investigation of alleged child abuse involving
plaintiff's daughters.  On May 28, 2004, an intervention by social workers, police, and court
employees resulted in the temporary, emergency placement of plaintiff's then 17½-year-old daughter,
Laura Elizabeth Lake (L.E.L.), in the care of Laura's older sister, Mary Harter.  Plaintiff's complaint
specifically identifies May 28, 2004, as "the date of the Defendants' actions complained of."  (docket
# 1, ¶ 10).  On that date, Laura Lake was kept inside a school conference room separate from
plaintiff, and plaintiff's demands to have Laura turned over to her were not met.  (*Id.* at 110-11).
Plaintiff claims that she was instructed to leave the school, and that she eventually did depart with
her younger daughter, E.J.L., then eight years old.  (*Id.*, ¶¶ 90, 108, 114, 120-23). Plaintiff complains
of perceived inadequacies in the hearings conducted on May 28, 2004, regarding Laura's custody,
and plaintiff continues to question the validity of court orders entered regarding the custody of her

children.  Plaintiff's complaint is generally devoid of allegations regarding what plaintiff did with

her 8-year-old, E.J.L., after they left the school in Midland, Michigan on May 28, 2004.  The

complaint indicates that for an unspecified period plaintiff was a resident of Portland, Oregon (*Id.*,

¶ 9) and that on August 10, 2005, a Portland, Oregon SWAT team seized and detained "E.J.L."  (*Id.*,

¶ 176).  Thereafter, plaintiff returned to Michigan, where she received a jury trial and was convicted

of the crimes of (1) assault and battery on Laura Elizabeth Lake; (2) taking E.J.L. with intent to

detain or conceal that child from Larry Jay Hycki, II, a person who had lawful charge of the child at

the time of the taking or retention;  and (3) interfering or attempting to interfere with the custody of

E.J.L.  After plaintiff had been sentenced on these criminal convictions and while she  was awaiting

the hearing on the termination of her parental rights with regard to E.J.L., plaintiff filed this lawsuit,

naming thirteen defendants in her *pro se* complaint:

> (1)  Jennifer Granholm in her official capacity as governor for the State of Michigan;
>
> (2)  Michigan Department of Human Services (DHS), formerly known as the Family Independence Agency (FIA);
>
> (3)  Marianne Udow in her official capacity as director, DHS;
>
> (4)  Midland County DHS;
>
> (5)  Shelly Marner in her individual capacity and in her official capacity as supervisor and caseworker for the Midland County DHS Child Protective Services;
>
> (6)  Larry Hycki in his individual capacity and in his official capacity a caseworker for the Midland County DHS Child Protective Services;
>
> (7)  Dan Rogalny in his individual capacity and in his official capacity as a caseworker for Midland County DHS Foster Care;
>
> (8)  Kathy Cozat in her individual capacity and her official capacity as supervisor, Midland County Foster Care;

(9)     Robert Booth in his individual capacity and in his official capacity as an officer of the City of Midland Police Department;

(10)    Linda Weiss in her individual capacity and in her official capacity as Midland County Court Referee;

(11)    County of Midland;

(12)    City of Midland; and

(13)    City of Midland Police Department.[1]

Plaintiff alleges that defendants' actions violated her rights[2] under the First, Fourth, and Fourteenth Amendments.  (docket # 1, ¶¶ 2-4, 199, 201-02, 205-06, 210).  Plaintiff requests that the court exercise supplemental jurisdiction over a lengthy list of purported state-law claims, including invasion of privacy, intentional infliction of emotional distress, negligence, and alleged violations of Michigan's constitution.  (*Id.*, ¶¶ 2-4, 199, 201-02, 205, 210, 212-28).[3]  Plaintiff

---

[1]A police department is not a legal entity under Michigan law and lacks the capacity to sue or be sued.  *See Haverstick Ent., Inc. v. Financial Fed. Credit, Inc.*, 32 F.3d 989, 992 n.1 (6th Cir. 1994); *Mooney v. City of Holland*, 490 F. Supp. 188, 190 (W.D. Mich. 1980).  Suits against police departments are deemed to be brought against the municipality itself.  *Haverstick*, 32 F.3d at 992 n.1. I will therefore address all plaintiff's claims against the police department as being brought against the City of Midland itself.

[2]In various portions of her complaint, plaintiff purports to bring claims in a representative capacity on behalf of her children.  *Pro se* litigants may not represent others.  Plaintiff is limited to asserting her own individual claims.  *See* 28 U.S.C. § 1654.

[3]Michigan law does not provide a cause of action for monetary damages against individual government employees for alleged violations of Michigan's constitution.  *See Jones v. Powell*, 612 N.W.2d 423, 426 (Mich. 2000); *Bennett v. Detroit Police Dep't*, 732 N.W.2d 164, 170 n. 3 (Mich. Ct. App. 2006).

Plaintiff filed the oaths of office of Judges Philip M. VanDam and Thomas L. Ludington as exhibits in her response to defendants' motions.  (docket # 19-8).  Her complaint and brief make scattered assertions that various actions by defendants violated their oaths of office or that a defendant or defendants failed to properly take the oath of his or her office.  (docket # 1, ¶¶ 27, 138; docket # 19 at 19, 27).  Even if plaintiff's claim or claims with regard to purported violations of "oaths of office" had been stated with greater clarity, they would not support claims against any

-3-

requests awards of monetary damages against defendants Hycki, Marner, Rogalny, Cozat, Booth, and Weiss their individual capacities.  (docket # 1 at 42-43, ¶¶ B, C, G).  She requests declaratory relief (1) that the first two sentences of Mich. Comp. Laws § 722.628(8) be declared unconstitutional on their face and as applied;[4] and (2) and that the court declare "the Statutes and Protocols[5] unconstitutional as applied by Defendants."  (docket # 1 at 42, ¶¶ D, E).  Finally, plaintiff requests injunctive relief prohibiting defendants and "their agents, employees and officers from enforcing" the first two sentences of Mich. Comp. Laws § 722.628(8).  (docket # 1 at 43, ¶ F).[6]

On June 20, 2007, Chief Judge Robert Holmes Bell entered an order directing me to file a report and recommendation on all dispositive matters in this case pursuant to 28 U.S.C. § 636(b)(1)(B).  (docket # 4).  Currently before me are defendants' motions for summary judgment.  (docket #'s 12, 15, 17).  On July 26, 2007, the court entered an order advising plaintiff of her

---

defendant under section 1983.  *See Krajicek v. Nichols*, No. 98-1878, 1999 WL 991252, at * 2 (6th Cir. Sept. 28, 1999); *Russell v. Clark*, No. 97-4360, 1999 WL 115492, at * 1 (6th Cir. Feb. 9, 1999); *Cass v. Ward*, No. 96-5839, 1997 WL 327323 (6th Cir. June 17, 1997); *Mechler v. Hodges*, No. C-1-02-948, 2005 WL 1406102 at * 7 (S.D. Ohio June 15, 2005); *accord United States v. Conces*, 507 F.3d 1028, 1041 (6th Cir. 2007).

[4]Section 8 of Mich. Comp. Laws § 722.628 states, "A school or other institution shall cooperate with the department during an investigation of a report of child abuse or neglect. Cooperation includes allowing access to the child without parental consent if access is determined by the department to be necessary to complete the investigation or to prevent abuse or neglect of the child.  However, the department shall notify the person responsible for the child's health or welfare about the department's contact with the child at the time or as soon afterward as the person can be reached.   The department may delay the notice if the notice would compromise the safety of the child or child's siblings or the integrity of the investigation, but only for the time 1 of those conditions exists."

[5]The "Statutes and Protocols" are listed in paragraph 3 of plaintiff's complaint.

[6]*Pro se* litigants cannot recover attorney's fees under 42 U.S.C. § 1988.  *See Kay v. Ehrler*, 499 U.S. 432 (1991).  Plaintiff's request for an award of attorney's fees (docket # 1 at 43, ¶ H) has been disregarded.

opportunity to submit affidavits, documents, and other materials in opposition to defendants' motions. (docket # 18). On August 22, 2007, plaintiff filed her brief and exhibits in opposition to defendants' motions. (docket # 19). Defendants filed reply briefs in late August 2007, and defendants' motions have long been ready for decision. For the reasons set forth herein, I recommend that defendants' motions for summary judgment be granted and that all plaintiff's claims be dismissed for lack of subject-matter jurisdiction. Alternatively, and in the order listed, I recommend that defendants' motions be granted and (1) that the court dismiss all plaintiff's claims on the basis of *Younger* abstention; or (2) that the court enter judgment in favor of defendants on all plaintiff's federal claims, and (3) that the court, in its discretion, decline to exercise supplemental jurisdiction over plaintiff's purported state-law claims.

## Standards of Review

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006); *Briggs v. Potter*, 463 F.3d 507, 511 (6th Cir. 2006). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Swiecicki v. Delgado*, 463 F.3d 489, 492 (6th Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party

opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

When the party without the burden of proof (generally the defendant) seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. Fed. R. Civ. P. 56(e); *see Pack v. Damon Corp.*, 434 F.3d 810, 814 (6th Cir. 2006). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Daniels v. Woodside*, 396 F.3d 730, 734 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252); *see Kessler v. Visteon Corp.*, 448 F.3d 326, 329 (6th Cir. 2006). "A nonmoving party may not avoid a properly supported motion for summary judgment by simply arguing that it relies solely or in part on credibility considerations. Instead, the nonmoving party must present evidence to defeat a properly supported motion for summary judgment. The party opposing summary judgment must be able to point to some facts which may or will entitle him to judgment, or to refute the proof of the moving party in some material portion, and the opposing party may not merely recite the incantation,

'credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof."

*Fogerty v. MGM Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004).

## Facts

The following facts are beyond genuine issue.  In October of 2005, the Midland County prosecutor filed a multi-count information against plaintiff.  The information included the following criminal charges:

Count: 1    did take, or restrain for more than 24 hours, his/her child, [E.J.L.], with intent to detain or conceal that child from Larry Jay H[y]cki, II, a person who had lawful charge of the child at the time of the taking or retention; contrary to MCL 750.350a(1) [750.350A1].

Count: 2    did, in any manner, interfere, or attempt to interfere with the custody of [E.J.L.], d.o.b., August 31, 1995, a child adjudged to be dependent, neglected, or delinquent pursuant to the Juvenile Code, MCL 712A.1 to 712A.32; contrary to MCL 750.138 [750.138].

Count: 3    did, make an assault or an assault and battery upon Laura Elizabeth Lake, a resident or former resident of her household; contrary to MCL 750.81(2) [750.812].

(docket # 13, Ex. 2).  On January 25, 2007, a Midland County jury convicted plaintiff on these criminal charges.[7]  On April 10, 2007, Midland County Circuit Court Judge Paul J. Clulo sentenced plaintiff to 30 days in jail, followed by 12 months of probation.  (Judgment of Sentence and Commitment to Jail, docket # 13, Ex. 1).  Plaintiff filed her claim of appeal on April 10, 2007.  Plaintiff's appeal from her criminal convictions remains pending in the Michigan Court of Appeals.  (docket # 13, Ex. 4; *see People v. Lake*, No. 277348 (Mich. Ct. App.)).  According to the Michigan

---

[7]A fourth count in the information was dismissed by the court.

Department of Corrections Offender Tracking Information System (OTIS), plaintiff is now on "absconder" status from probation.

On June 11, 2007, Judge Dorene S. Allen of the Midland County Circuit Court, Family Division, entered an order which, among other things, set August 27, 2007 as the date for a hearing on the termination of plaintiff's parental rights with regard to E.J.L.  (docket # 13, Ex. 6).[8] On June 15, 2007, plaintiff filed this lawsuit.

In December 2003, well over three years before plaintiff filed her complaint, Larry J. Hycki II of Children's Protective Services, State of Michigan Family Independence Agency for Midland and Gladwin Counties, sent correspondence to plaintiff advising plaintiff that he was conducting an investigation of alleged child abuse, the focal point of which was a physical altercation between plaintiff and her daughter, Laura Lake.[9]  Hycki's correspondence invited plaintiff to meet with him and to provide Hycki with plaintiff's version of events.  (docket # 19-7).  During the four-month period of December 2003 through March 2004, defendant Hycki exchanged correspondence with plaintiff by letter, fax, and e-mail.  (*Id.*).  Plaintiff states that on December 7, 2003, Hycki went to Laura's school, Calvary Baptist Academy, and interviewed Laura.  (docket # 1, ¶ 31).

---

[8]Michigan Court of Appeals records indicate that on October 31, 2007, Judge Allen entered an order terminating plaintiff's parental rights regarding E.J.L.  On November 20, 2007, plaintiff filed a claim of appeal of the order terminating her parental rights.  *See In re Lake*, No. 282036 (Mich. Ct. App.).

[9]Plaintiff's complaint is not a model of clarity, but plaintiff clearly attributes the notification of Child Protective Services to Mary Harter, plaintiff's eldest daughter, then over 20 years old and living in Charlevoix County, Michigan.  (docket # 1, ¶¶ 48, 73, 92).  Plaintiff asserts that in December 2003, Ms. Harter had threatened to use Child Protective Services to obtain custody over Harter's  younger sisters Laura and E.J.L.  (*Id.*, ¶¶  50, 87).

According to plaintiff, Department of Human Services (DHS) documents indicate that on Tuesday, May 26, 2004, DHS received a report of child abuse and neglect indicating that plaintiff had physically abused Laura by choking her until she could not breathe and that plaintiff had knocked E.J.L. to the floor.  (docket # 1, ¶¶ 82, 83).  Both children were absent from school the next day.  On May 28, 2004, Laura and E.J.L. went to school.  (*Id.*, ¶ 90).  Defendant Hycki interviewed Laura.  (*Id.*, ¶¶ 91, 102).  The school contacted plaintiff.  (*Id.*, ¶ 108).  At school, plaintiff discovered that Laura was being kept inside a school conference room separate from plaintiff.  (*Id.,* ¶¶ 110-19).  Plaintiff's demands to have Laura turned over to her were not met, and plaintiff claims that she was instructed to leave the school, and that she did eventually leave with plaintiff's younger daughter, E.J.L.  (*Id.*, ¶¶ 90, 108, 114, 120-23).  The police had been contacted, but apparently arrived after plaintiff had left.  (*Id.*, ¶ 132-34).

Defendants Hycki and Court Referee Weiss were participants in the process that resulted in a court order regarding the custody of Laura.  (*Id.*, ¶¶ 136-46).  Defendant Marner was defendant Hycki's supervisor.  (*Id.*, ¶ 137).  A hearing was conducted on the afternoon of May 28, 2004, and Judge VanDam entered an order awarding temporary foster care of Laura and E.J.L. to DHS.  (*Id.*, ¶ 157).  Plaintiff asserts that there is a "serious question" as to the authenticity of the judge's signature and she believes that other aspects of the custody hearing were deficient.  (*Id.*, ¶¶ 157-59).  Plaintiff states that Midland County Circuit Court Referee Linda Weiss heard this matter on May 28, 2004, and that she used a "rubber stamp" of Chief Judge Thomas Ludington's signature to place a "'24-hour' hold or remove both children."  (*Id.*, ¶ 161).  Plaintiff states that defendant Hycki "testified" in the court proceedings held on May 28, 2004. (docket # 1, ¶ 37, 83).

On May 28, 2004, Midland City Police Officer Robert Booth was present on "civil standby" as DHS workers briefly took Laura Lake back to the residence she had shared with plaintiff. (*Id.*, ¶¶ 165-68). Although plaintiff was not present, she believes that her ex-husband Robert Lake and daughter Mary Harter "entered and removed property from the home." (*Id.*, ¶ 169). She also believes that defendant Hycki entered the residence. (*Id.*).

As previously stated, plaintiff's complaint is generally devoid of allegations regarding what she did with E.J.L. after they left the school in Midland, Michigan on May 28, 2004. Another hearing regarding custody of the children occurred on June 3, 2004. Plaintiff states that an order was entered signed by Judge VanDam and initialed by "L.W." which deprived plaintiff of the custody of both children. (*Id.*, ¶ 175). Plaintiff states that on August 10, 2005, a Portland, Oregon SWAT team seized and detained E.J.L. (*Id.*, ¶ 176).[10]

### Discussion

## I.    Jurisdiction

Federal courts are courts of limited jurisdiction which may exercise only those powers authorized by Constitution and statute. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). Therefore, "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377 (citations omitted). The first and fundamental question presented by every case

---

[10]Plaintiff states in her brief that she was arrested by Portland police. (docket # 19-2 at 2). Plaintiff's brief is not evidence, but in it she describes how she was purportedly "subjected to repeated beatings and other humiliations inside the jail and continual questioning by jail personnel and at least two psychiatrists about psychotropic medications Plaintiff was alleged to be on or should be taking." (*Id.*). Plaintiff goes on to state that she has "never been a mental patient or prescribed any medication for mental disorders." (*Id.* at 2-3).

brought to the federal courts is whether it has jurisdiction to hear a case, even where the parties concede or do not raise or address the issue. *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986); *see also American Telecom Co., L.L.C. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007) ("Subject matter jurisdiction is always a threshold question."). "Quite aside from whether the parties raise jurisdictional issues themselves--or even attempt to consent or agree to federal jurisdiction--federal courts have an independent obligation to investigate and police the boundaries of their own jurisdiction." *Douglas v. E.G. Baldwin Assoc., Inc.*, 150 F.3d 604, 606 (6th Cir. 1998); *see Community Health Plan of Ohio v. Mosser*, 347 F.3d 619, 622 (6th Cir. 2003) ("Any court may address the issue of subject matter jurisdiction at any time, with or without the issue being raised by a party to the action.").

Plaintiff has the burden of proving this court's jurisdiction. *See Walburn v. Lockheed Martin* Corp., 431 F.3d 966, 970 (6th Cir. 2005); *COB Clearinghouse Corp. v. Aetna Healthcare, Inc.*, 362 F.3d 877, 881 (6th Cir. 2004) (6th Cir. 2004). "Specifically, the plaintiff must show that the complaint alleges a claim under federal law, and that the claim is 'substantial.'" *Michigan Southern R.R. Co. v. Branch & St. Joseph Counties Rail Users Ass'n, Inc.*, 287 F.3d 568, 573 (6th Cir. 2002); *see Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996). Mere reference to a federal statutes does not establish federal jurisdiction. *Michigan Southern*, 287 F.3d at 574.

For nearly a century and a half, the Supreme Court has held that the federal courts lack jurisdiction over questions of divorce, alimony, or child custody. *See Barber v. Barber*, 62 U.S. (21 How.) 582, 584 (1858); *see also Drewes v. Ilnicki*, 863 F.2d 469, 471 (6th Cir. 1988); *Denman v. Leedy*, 479 F.2d 1097, 1098 (6th Cir. 1973) (*per curiam*). "Even when brought under the guise

of a federal question action, a suit whose subject is domestic relations generally will not be entertained in a federal court." *Firestone v. Cleveland Trust Co.*, 654 F.2d 1212, 1215 (6th Cir. 1981). Questions of divorce are within the exclusive province of the state courts. *McLaughlin v. Cotner*, 193 F.3d 410, 412 (6th Cir. 1999). "The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the state and not to the laws of the United States." *In re Burrus*, 136 U.S. 586, 593-94 (1890); *see Partridge v. Ohio*, 79 F. App'x 844, 845 (6th Cir. 2003) ("Federal courts have no jurisdiction to resolve domestic relations disputes involving child custody or divorce."); *Danforth v. Celebrezze*, 76 F. App'x 615 (6th Cir. 2004) ("[F]ederal courts lack jurisdiction where the action is a mere pretense and the suit is actually concerned with domestic relations issues."); *Evans v. Klaeger*, 12 F. App'x 326, 327 (6th Cir. 2001); *Mensah v. St. Joseph County Family Independence Agency*, No. 98-1726, 1999 WL 623733, at * 2 (6th Cir. Aug. 11, 1999). The Supreme Court has consistently reaffirmed the longstanding doctrine that the federal courts lack power to issue divorce, alimony and child-custody decrees. *See Ankenbrandt v. Richards*, 504 U.S. 689, 703-07 (1992).

The court lacks jurisdiction over any claim by plaintiff that she suffered injuries resulting from the decisions of the state courts in child custody proceedings or in the court proceedings resulting in her criminal convictions. This court does not possess direct oversight powers over Michigan's courts. *See Raymond v. Moyer*, 501 F.3d 548, 550-51 (6th Cir. 2007); *Hood v. Keller*, 341 F.3d 593, 597 (6th Cir. 2003). The recourse available to plaintiff in response to an adverse decision of a state trial court is an appeal to the Michigan Court of Appeals, an application for leave to appeal to the Michigan Supreme Court, and if necessary, a writ of *certiorari* from the United States Supreme Court. It is patent that this court lacks jurisdiction to review the state-court

-12-

custody or parental-rights decisions plaintiff is attempting to challenge through this lawsuit.  *See District of Columbia Circuit Court of Appeals v. Feldman*, 460 U.S. 462, 483 n.16 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923); *Abbott v. Michigan*, 474 F.3d 324, 328 (6th Cir. 2007); *accord Exxon Mobil Corp v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *Davis v. United States*, 499 F.3d 590, 595 (6th Cir. 2007); *Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 241 F. App'x 285, 287 (6th Cir. 2007) ("If the source of the injury [claimed] is the state court decision, then the *Rooker-Feldman* doctrine [] prevent[s] the district court from asserting jurisdiction.").[11]

I recommend that plaintiff's complaint against all defendants be dismissed for lack of subject matter jurisdiction.

## II.    Other Grounds for Granting Defendants' Motions

Assuming *arguendo* that the court has jurisdiction over one or more claims that plaintiff is attempting to assert in this lawsuit, defendants' motions for summary judgment should be granted on multiple grounds.

---

[11]A rule of thumb utilized by the Sixth Circuit as a guide to applying *Rooker-Feldman* is as follows: "[I]f the federal plaintiff was the plaintiff in state court, apply *res judicata*; if the federal plaintiff was the defendant in state court, apply *Rooker-Feldman*.   A plaintiff who loses and tries again encounters the law of preclusion [ *res judicata* ]. The second complaint shows that the plaintiff wants to ignore rather than upset the judgment of the state tribunal.   A defendant who has lost in state court and sues in federal court does not assert injury at the hands of his adversary; he asserts injury at the hands of the court, and the second suit therefore is an effort to obtain collateral review. It must be dismissed not on the basis of preclusion [*res judicata* ] but for lack of jurisdiction [*Rooker-Feldman* ]." *Hutcherson v. Lauderdale County*, 326 F.3d 747, 755 (6th Cir.2003).

A.    _Younger_ Abstention

Defendants seek dismissal of plaintiff's claims on the basis of _Younger_ abstention. Plaintiff argues that _Younger_ abstention should not apply. (Plf. Brief at 37-48). "_Younger_ abstention is not a question of jurisdiction, but is rather based on 'strong policies counseling against the exercise of such jurisdiction.'"  _O'Neill v. Coughlan_, No. 07-3206, __ F. 3d __, 2008 WL 80553, at * 2 (6th Cir. Jan. 8, 2008) ("quoting _Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc._, 477 U.S. 619, 626 (1986)).  In _Younger v. Harris_, 401 U.S. 37 (1971), the Supreme Court held that considerations of comity, equity and federalism require a federal court to abstain from enjoining pending state criminal prosecutions in the absence of extraordinary circumstances:[12]

> Except in extraordinary circumstances federal courts should "permit state courts to try state cases free from interference by federal courts."  _Younger v. Harris_, 401 U.S. 37, 43 (1971). The underlying concern of _Younger_ is the "threat to our federal system posed by displacement of state courts by those of the National Government."  _Moore v. Sims_, 442 U.S. 415, 423, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979).  The Sixth Circuit has held that _Younger_ abstention is appropriate "when the state proceeding (1) is currently pending, (2) involves an important state interest, and (3) affords the plaintiff an adequate opportunity to raise constitutional claims."  _Coles v. Granville_, 448 F.3d 853, 865 (6th Cir. 2006). "[T]he temporary removal of a child in a child-abuse context is ... 'in aid of and closely related to criminal statutes'" and _Younger_ abstention has been applied when there was a pending state court child abuse proceeding.  _Moore_, 442 U.S. at 423 (quoting _Huffman v. Pursue, Ltd._, 420 U.S. 592, 604, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975)). "A district court deciding to abstain under _Younger_ has the option of either dismissing the case without prejudice or holding the case in abeyance."  _Coles_, 448 F.3d at 866.

---

[12]In _Younger_'s companion case, _Samuels v. Mackell_, 401 U.S. 66 (1971), the Supreme Court held that the same equitable principles would require abstention in actions for declaratory judgment which would interfere with a pending state criminal prosecution.  Under Sixth Circuit authority, a federal court must abstain under the _Younger_ doctrine if a state criminal prosecution is pending at the time petitioner files his civil action and he has adequate means to vindicate federal rights in the state proceeding.  _See Foster v. Kassulke_, 898 F.2d 1144, 1146-47 (6th Cir. 1990).  In the present case, plaintiff may assert her federal claims in the Michigan Court of Appeals on appeal, seek leave to appeal to the Michigan Supreme Court, and thereafter seek review by _certiorari_ in the United States Supreme Court.  Obviously, no extraordinary circumstances warrant recognition of an exception to the _Younger_ abstention doctrine in this case.

*Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 638 (6th Cir. 2007).  State court

proceedings are pending in the Michigan Court of Appeals with regard to plaintiff's criminal

convictions and with regard to the termination of plaintiff's parental rights over E.J.L.[13]  This

appellate litigation easily satisfies the "currently pending" component.  *See Huffman v. Pursue, Ltd.*,

420 U.S. 592, 609 (1975); *Foster v. Kassulke*, 898 F.2d 1144, 1146 (6th Cir.1990).   It is patent that

litigation was pending in state trial court when plaintiff filed this lawsuit.[14]  The State of Michigan's

important state interests with regard to child custody proceedings has already been addressed, and

the State's interest in enforcing its courts' orders regarding child custody, if necessary through the

sanction of criminal penalties, is no less important.   Plaintiff argues that she lacked an adequate

opportunity to assert her claims in state court:

> Plaintiff will show that because of the sloppiness and by way of substandard "custom and practices" in child abuse and neglect proceedings the Midland courts have disallowed the raising of numerous constitutional issues to protect one or more of their own misdeeds conducted against Plaintiff.  As one Midland judge has stated on the record: "[W]e do things different here," when the authenticity of the judges' signatures on original orders were raised and summarily dismissed as a non[-]issue.  In asking for a Bill of particulars Plaintiff was told by one Midland Judge "it was an outdated 'document' that's no longer used."  Plaintiff will show that she was **intentionally** left bereft of legal counsel for three months, on no less than two separate occasions, when the crimes charged against her would send her to jail.

---

[13]"'Although *Younger* arose in the context of a state criminal proceeding, the Supreme Court has extended its principles to civil enforcement actions. . . .'" *Coles v. Granville*, 448 F.3d 853, 865 (6th Cir. 2006).

[14]"The initial time frame of reference for abstention purposes is the time that the federal complaint is filed." *Zalman v. Armstrong*, 802 F.2d 199, 204 (6th Cir. 1986).  Plaintiff filed her complaint immediately after the state court had issued an order scheduling a hearing on the termination of plaintiff's parental rights with regard to E.J.L.  Thus, there is strong circumstantial evidence that plaintiff filed this lawsuit in an effort to disrupt ongoing state-court custody proceedings.

(Plf. Brief at 46).  Generally, the purported defects listed above are not constitutional in nature.

Constitutional claims that were raised by plaintiff and rejected by the Midland Courts are likely

preserved for appellate review in the State's appellate courts.  I recommend that all plaintiff's claims

be dismissed on *Younger* abstention grounds.

   If the court determines that it has jurisdiction and determines that it should be

exercised in this case, I find on an alternative basis that defendants are entitled to judgment in their

favor as a matter of law on all plaintiff's federal claims.

  B. <u>Statute of Limitations</u>

   Defendants seek summary judgment on the ground that plaintiff's claims are barred

by the statute of limitations.  Plaintiff's federal claims against defendants under section 1983 are

subject to a three-year statute of limitations.  *Wolfe v. Perry*, 412 F.3d 707, 714 (6th Cir. 2005) ("We

have held that the applicable statute of limitations to be borrowed for § 1983 actions arising in

Michigan is the state's three-year limitations period for personal injury claims.") (citing MICH.

COMP. LAWS § 600.5805(10)); *see also Xu v. Michigan State Univ.*, 195 F. App'x 452, 455 (6th Cir.

2006); *Carroll v. Wilkerson*, 782 F.2d 44, 45 (6th Cir. 1986).  The court must determine the date on

which plaintiff's claims against each defendant accrued.  "[T]he accrual date of a § 1983 cause of

action is a question of federal law that is *not* resolved by reference to state law." *Wallace v. Kato*,

127 S. Ct. 1091, 1095 (2007).  "[F]ederal standards govern when the statute [of limitations] begins

to run." *Sharpe v. Cureton*, 319 F.3d 259, 266 (6th Cir. 2003); *see Wilson v. Garcia*, 471 U.S. 261,

267 (1985).  "Under the traditional rule of accrual . . . the tort cause of action accrues, and the statute

of limitation begins to run, when the wrongful act or omission results in damages.  The cause of

action accrues even though the full extent of injury is not then known or predictable." *Wallace v. Kato*, 127 S. Ct. 1091, 1097 (2007). The statute of limitations begins to run when the plaintiff knows or has reason to know of the act providing the basis for her injury has occurred. *See Edison v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007); *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1997); *Friedman v. Estate of Presser*, 929 F.2d 1151, 1159 (6th Cir. 1991); *McCune v. City of Grand Rapids*, 842 F.2d 903, 905 (6th Cir. 1988).

Nearly all plaintiff's allegations relate to the events of May 28, 2004, although a few reach as far back as December 2003. Plaintiff waited until June 15, 2007, to file her complaint, a date long after the three-year statute of limitations had run. In an effort to avoid the statute of limitations bar, plaintiff argues, without submitting supporting evidence, that she did not "know" of the court proceedings regarding custody of her daughter Laura:

> Contrary to Defendants' pleadings, actions did not commence on December 7, 2003, culminating in the removal of Plaintiff's child on May 24, 2004. Plaintiff did not know on May 28, 2004 Defendant Hycki had actually removed her child or filed any petition, false or accurate, with Midland County Probate Court. Plaintiff was never noticed of these events. Plaintiff was aware her 17 1/2 year-old daughter went to her 21-year-old sibling's home as she was in frequent contact with her via phone. No discussion of any court action ever occurred.

> It was *only* after Plaintiff's return to Michigan and on September 26th 2005 Plaintiff was charged with parental kidnaping (however not from the child's father); interference with a juvenile court (who had **properly adjudged** the minor to be delinquent, dependent or neglected -- which Plaintiff challenges any proper adjudication ever occurred), and two counts of domestic violence.

(Plf. Brief at 22). Plaintiff's cause of action, if any against defendants, accrued on or before May 28, 2004. Her assertion that she did not know of the court proceedings concerning Laura's custody until September 2005 strains credulity, but even if taken at face value, it would not save her claims from being barred. The statute of limitations began to run on May 28, 2004, because plaintiff "had reason

to know" the acts providing the basis for her alleged injury had occurred.  Plaintiff could not defer the accrual of her claims through her choice of absenting herself from the State of Michigan, although plaintiff no doubt had greater incentives to "discover" purported deficiencies in defendants' conduct after she returned to Michigan, where she faced criminal charges and proceedings for the termination of her parental rights with regard to E.J.L.  The criminal conduct which formed the basis of more than one of plaintiff's convictions cannot provide a basis for equitable tolling.  I find that plaintiff's federal claims against defendants are barred by the statute of limitations.

C.    Immunity

(1)    Eleventh Amendment Immunity

The Eleventh Amendment bars suit in federal court against a state and its departments or agencies unless the state has waived its sovereign immunity or unequivocally consented to be sued. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). The State of Michigan has not consented to civil rights suits in federal court. *See Johnson v. Dellatifia*, 357 F.3d 539, 545 (6th Cir. 2004)); *Abick v. Michigan*, 803 F.3d 874, 877 (6th Cir.1986).

The Michigan Department of Human Services, formerly known as the Family Independence Agency,[15] is a department of Michigan government. MICH. COMP. LAWS § 400.1. The inclusion of the name of a county, as in "Midland County Department of Human Services," simply identifies the local division of the state's department -- the employees at the local division are nevertheless state employees.  *See Lintz v. Skipski*, 807 F. Supp. 1299, 1303 (W.D. Mich.1992); *see also Thomas v. Michigan Family Independence Agency*, 67 F. App'x 908 (6th Cir. 2003). The

_____

[15]Governor Jennifer Granholm's executive order 2005-6 changed the department's name, effective March 15, 2005.

Sixth Circuit has emphasized that, "the most important factor bearing on the Eleventh Amendment question is who would pay a judgment against the entity being sued." *S.J. v. Hamilton County, Ohio*, 374 F.3d 416, 420 (6th Cir.2004). Any judgment entered against the Midland County Department of Human Services would be paid from the state treasury. MICH. COMP. LAWS § 18.1396; *see Parker v. State*, Nos. 234828, 234829, 234830, 2004 WL 435395, at * 1 (Mich. Ct. App. Mar. 9, 2004) (affirming judgment of the Michigan Court of Claims); *Pope v. Family Independence Agency*, No. 205898, 1999 WL 33437824 (Mich. Ct. App. Aug.17, 1999) (same).

A suit against a state officer in her official capacity is simply another way of pleading an action against the state. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Ernst v. Roberts*, 379 F.3d 373, 380 n. 10 (6th Cir.2004). Plaintiff's claims for monetary damages against defendants Granholm, Udow, Marner, Hycki, Rogalny, and Cozat in their official capacities, are barred by the Eleventh Amendment immunity.

Plaintiff has attempted to assert a claim against Midland County based on the actions of the Midland County Probate Court and its employee, Linda Weiss, the Midland County Court referee. (docket # 1, ¶¶ 191-94). A county is liable only for acts done by its agents or employees in furtherance of county policy, custom or practice. *See Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658 (1978); *Holloway v. Ohio*, 179 F.3d 431, 437 (6th Cir. 1999). The Midland County Probate Court is part of the judicial branch of state government, and its employees are state employees. They are part of Michigan's "one court of justice" which constitutes a separate branch of state government. MICH. CONST. 1963, art. 6, § 1. The court and its judges are not subject to the control of the county or its board of commissioners, nor does the county pass policies that judges must follow in the exercise of their judicial responsibilities. Consequently, the county is simply not

-19-

liable for a judge's acts or omissions under any theory.  *See Bridges v. Senger*, 730 F. Supp. 1401, 1405 (W.D. Mich. 1990).  Similarly, the court referee is not subject to the control of Midland County.  Rather, she is under the direct control of the chief circuit judge.  *See Geller v. Washtenaw County*, No. 04-74927, 2005 WL 3556247, at * 7 (E.D. Mich. 2005).  The county cannot be held responsible for acts or omissions by the court referee, because the county does not govern the court referee through its policies.  Consequently, the claims against Midland County arising from the conduct of probate court proceedings are meritless.  Defendant Weiss is entitled to Eleventh Amendment immunity on plaintiff's claims for damages against her in her official capacity.

Plaintiff's claims against the Michigan Department of Human Services and the Midland County Department of Human Services  fail on a separate and independent ground. States and their departments are not "persons" within the meaning of 42 U.S.C. § 1983.  *See Will v. Michigan Dep't of State Police*, 491 U.S. at 71.

(2)    Absolute Immunity

Defendant Hycki is entitled to absolute immunity.  The Sixth Circuit has held that social workers who initiate judicial proceedings against those suspected of child abuse or neglect perform a prosecutorial function and so are entitled to absolute immunity.  *See Achterhof v. Selvaggio*, 886 F.2d 826, 830 (6th Cir.1989); *see also Meyers v. Franklin County Court of Common Pleas*, 81 F. App'x 49, 53-54 (6th Cir. 2003).  Furthermore, the Sixth Circuit has repeatedly held that social workers are absolutely immune for actions that are "intimately associated" with the judicial phase of proceedings relating to the welfare of the child.  *See Rippy v. Hattaway*, 270 F.3d 416, 422 (6th Cir.2001); *Sayler v. Patrick*, 874 F.2d 374, 377-78 (6th Cir.1989); *see also Meyers*, 81 F. App'x

-20-

at 53-54.  Quasi-judicial immunity would bar any claim against defendant Weiss based upon her function of advising the court regarding the best interests of the child, even if she was incorrect in her assessment.  *See Rippy*, 270 F.3d at 422; *Hughes v. Long*, 242 F.3d 121, 126 (3d Cir.2001); *see also Palmer v. Buscemi*, No. 05-10094, 2007 WL 2903203, at * 5 (E.D. Mich. Sept. 30, 2007); *Robinson v. Ingham County Family Independence Agency*, No. 1:05-cv-436, 2005 WL 1907526, *4 (W.D. Mich. Aug. 10, 2005).

(3)     Testimonial Immunity

Plaintiff's complaint objects to the testimony defendant Hycki gave in state court during the child custody hearings.  The Supreme Court has recognized that testifying witnesses are entitled to absolute witness immunity.  *See Briscoe v. LaHue*, 460 U.S. 325 (1982).  Defendant Hycki is entitled to absolute immunity on these claims.

(4)     Qualified Immunity

Defendants Hycki, Marner, Rogalny, and Cozat seek entry of judgment in their favor on plaintiff's claims for damages against them in their individual capacities on qualified immunity grounds.  "The purpose of the qualified immunity defense is to protect public officials from undue interference with their duties and from potentially disabling threats of liability."  *Perez v. Oakland County*, 466 F. 3d 416, 426 (6th Cir. 2006); *see Vakilan v. Shaw*, 335 F.3d 509, 516 (6th Cir. 2003). When a defendant raises the defense of qualified immunity, the plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity. *See Haynes v. City of Circleville*, 474 F.3d 357, 362 (6th Cir. 2007); *Baker v. City of Hamilton*, 471 F.3d 601, 605 (6th Cir. 2006); *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006).

In *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), the Supreme Court held that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818; *see Hudson v. Hudson*, 475 F.3d 741, 744 (6th Cir. 2007). The question whether qualified immunity attaches to an official's actions is a purely legal issue for the court. *See Fox v. DeSoto*, 489 F.3d 227, 235 (6th Cir. 2007); *Swiecicki v. Delgado*, 463 F.3d 489, 497 (6th Cir. 2006); *Summers v. Leis*, 368 F.3d 881, 885 (6th Cir. 2004).

The Supreme Court's decision in *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001), emphasized that the defense of qualified immunity must be addressed in proper sequence. The initial inquiry must be whether the plaintiff has alleged and supported with evidence[16] facts showing that the defendants' conduct violated a constitutional or statutory right. *Saucier*, 533 U.S. at 201; *see Scott v. Harris*, 127 S. Ct. 1769, 1774 (2007); *Silberstein v. City of Dayton*, 440 F.3d at 311; *see also Armstrong v. City of Melvindale*, 432 F.3d 695, 699 (6th Cir. 2006) ("Whether a constitutional violation occurred is a threshold issue: if the officers' conduct violated no constitutionally protected right, there is no need for further analysis."); *accord Caudill v. Hollan*, 431 F.3d 900, 908 n. 5 (6th

---

[16] A qualified immunity defense can be asserted at various stages of the litigation, including the summary judgment stage. *See English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994). The qualified immunity inquiry at the summary judgment stage is distinguished from the Rule 12(b)(6) stage in that generalized notice pleading no longer suffices, and the broader summary judgment record provides the framework within which the actions of each individual defendant must be evaluated. *See Riverdale Mills Corp. v. Pimpare*, 392 F.3d 55, 62 (1st Cir. 2004). At the summary judgment stage, a plaintiff may not rely on [her] pleadings. Rather, the issue is whether "the plaintiff has offered sufficient evidence to indicate that what the official did was objectively unreasonable in light of the clearly established constitutional rights." *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 905 (6th Cir. 2004).

Cir. 2005) ("[D]istrict courts . . . may not assume a constitutional violation or skip to qualified immunity, even when qualified immunity analysis seems conclusive.").  Plaintiff has not alleged or supported with evidence any First, Fourth, or Fourteenth Amendment claim against defendants Hycki, Marner, Rogalny or Cozat on which a reasonable trier of fact could find in plaintiff's favor.

Assuming *arguendo* that plaintiff had been able to satisfy the initial requirement under *Saucier*, she would nonetheless fall short of showing that the right she claims each defendant violated was "clearly established" such that a reasonable official in the defendant's position, at the time the act was committed, would have understood that his or her behavior violated that right.  533 U.S. at 201.  The Supreme Court's decision in *Brosseau v. Haugen*, 543 U.S. 194 (2004), examined the underlying purpose of requiring that the law be clearly established:

> Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, misapprehends the law governing the circumstances she confronted. . . .   Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct.  If the law at the time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation.

543 U.S. at 198.  The Supreme Court and the Sixth Circuit have emphasized that the second inquiry "'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Brosseau v. Haugen*, 543 U.S. at 198 (quoting *Saucier*, 533 U.S. at 201); *see Silberstein*, 440 F.3d at 316.  "'[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant sense.'"  *Lyons v. City of Xenia*, 417 F.3d 565, 572 (6th Cir. 2005) (quoting *Brosseau*, 543 U.S. at 199); s*ee Perez*, 466 F.3d at 428 ("Because most legal

-23-

rights are clearly established at some level of generality, immunity would be impossible to obtain

if a plaintiff were required only to cite an abstract legal principle that an official had 'clearly

violated.'").  "The contours of the right must be sufficiently clear that a reasonable official would

understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640

(1987); *see Rippy v. Hattaway*, 270 F.3d 416, 424 (6th Cir. 2001).  "Thus, '[t]he relevant, dispositive

inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the

situation he confronted.'" *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001) (quoting *Saucier*,

533 U.S. at 201); *see Weaver v. Shadoan*, 340 F.3d 398, 407 (6th Cir. 2003); *Risbridger v. Connelly*,

275 F.3d 565, 569 (6th Cir. 2002).  Although it is not always necessary to find a case where identical

conduct had previously been determined to be unconstitutional,[17] in light of preexisting law, the

unlawfulness must be apparent.  *See Wilson v. Layne*, 526 U.S. 603, 615 (1999); *Feathers v. Aey*,

319 F.3d 843, 848 (6th Cir. 2003); *Risbridger*, 273 F.3d at 569.  "Ordinarily, a Supreme Court or

Sixth Circuit decision on point is necessary." *Carver v. City of Cincinnati*, 474 F.3d 283, 287 (6th

Cir. 2007); *see Jackson v. Schultz*, 429 F.3d 586, 592 (6th Cir. 2005).  The court must focus on

whether, at the time the defendant acted, the right asserted was "clearly established" by the decisions

of the Supreme Court or the Sixth Circuit.  *See Reynolds v. City of Anchorage*, 379 F.3d 358, 366

(6th Cir. 2004); *Gragg v. Kentucky Cabinet for Workforce Dev.*, 289 F.3d 958, 964 (6th Cir. 2002).

"'[Q]ualified immunity protects all but the plainly incompetent or those who knowingly violate the

---

[17]"Of course, in an obvious case, [general constitutional] standards can 'clearly establish' the
answer, even without a body of relevant case law."  *Brosseau*, 543 U.S. at 199; *Lyons*, 417 F.3d at
572.

law.'" *Armstrong*, 432 F.3d at 699 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  "Thus, officials are 'entitled to qualified immunity [when] their decision was reasonable, even if mistaken.'" *Toms v. Taft*, 338 F.3d 519, 524 (6th Cir. 2003) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)); *Humphrey v. Mabry*, 482 F.3d 840, 847 (6th Cir. 2007) ("Qualified immunity leaves government authorities 'ample room for mistaken judgments.'") (quoting *Scott v. Clay County*, 205 F.3d 867, 873 n. 9 (6th Cir. 2000)).  "If reasonable officials could disagree on the issue, immunity should be recognized."  *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999); *see Akers*, 352 F.3d at 1042.  "For qualified immunity to be surrendered, pre-existing law must dictate, that is truly compel (not just suggest or allow to raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law in the circumstances." *Saylor v. Board of Educ.*, 118 F.3d 507, 514 (6th Cir. 1997); *see Gragg*, 289 F.3d at 964.  "The burden of convincing a court that the law was clearly established 'rests squarely with the plaintiff.'"  *Key*, 179 F.3d at 1000 (quoting *Cope v. Heltsley*, 128 F.3d 452, 459 (6th Cir. 1997)); *see Perez*, 466 F.3d at 427; *accord See v. City of Elyria*, 502 F.3d 484, 491 (6th Cir. 2007) ("The plaintiff carries the burden of proof to show that the defendant is not entitled to qualified immunity.").

Plaintiff claims a number of rights in broad, general propositions, such as her "rights to be free from criminal charges on the basis of false evidence that was deliberately fabricated by the government" (Plf. Brief at 58), rather than engaging in the "more particularized" showing necessary to deprive defendants of the protection of qualified immunity.  I find that defendants Hycki, Marner, Rogalny and Cozat are entitled to qualified immunity on all plaintiff's federal claims.

D.     *Respondeat Superior* Liability

Plaintiff's purported claims against defendants Granholm, Udow, Marner, Rogalny and Cozat are based on their positions as supervisors.  Liability of supervisory officers under 42 U.S.C. § 1983 cannot be based upon a *respondeat superior* theory.  *See Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006); *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 470 (6th Cir. 2006); *Turner v. City of Taylor*, 412 F.3d 629, 643 (6th Cir. 2005).  These defendants are entitled to judgment in their favor as a matter of law on all plaintiff's federal claims against them.

E.     *Heck* Bar

Throughout plaintiff's complaint and  brief she attempts to downplay her criminal convictions.  A jury found plaintiff guilty of committing an assault and battery upon Laura Elizabeth Lake in violation of Mich. Comp. Laws § 750.81(2).  At this juncture, the court cannot accept plaintiff's claims that there was nothing for employees of Michigan's Department of Human Services to investigate, or that plaintiff never committed an assault and battery on Laura.  Although the primary focus of plaintiff's complaint is the defendants' actions with regard to Laura, plaintiff's complaint also contains references to E.J.L.  Plaintiff was found guilty of  interfering, or attempting to interfere with the custody of E.J.L., "a child adjudged to be dependent, neglected, or delinquent pursuant to the Juvenile Code, MCL 712A.1 to 712A.32" contrary to Mich. Comp. Laws § 750.138.  A jury found that plaintiff did take or restrain E.J.L. for more than 24 hours with intent to detain or conceal that child from Larry Jay Hycki, II, "a person who had lawful charge of the child at the time of the taking or retention" contrary to Mich. Comp. Laws § 750.350a(1).  An essential element of

-26-

the latter crime is that Hycki had lawful charge of E.J.L. at the time plaintiff took or retained her. Plaintiff cannot collaterally attack that determination through this lawsuit.

The Supreme Court has held that a civil rights claim that necessarily implies the invalidity of plaintiff's criminal conviction is not cognizable under § 1983 until plaintiff's conviction has been overturned.  In *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), the Supreme Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]."  *Edwards v. Balisok*, 520 U.S. 641, 646 (1997).  Plaintiff has not presented evidence that her criminal convictions have been overturned.

F.   <u>Supplemental Jurisdiction</u>

Plaintiff asks the court to exercise jurisdiction over numerous purported claims under state law.  "Supplemental jurisdiction is a doctrine of discretion, not of plaintiff's right."  *Habich v. City of Dearborn*, 331 F.3d 524, 535 (6th Cir. 2003).  Generally, where all federal claims have been dismissed, federal courts decline to exercise supplemental jurisdiction over a plaintiff's state-law claims.  *See* 28 U.S.C. § 1367(c)(3);  *see also Robert N. Clemens Trust v. Morgan Stanley DW, Inc.*, 485 F. 3d 840, 853 (6th Cir. 2007);  *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006);  *Widgren v. Maple Grove Township*, 429 F.3d 575, 586 (6th Cir. 2005).  There is no reason in this case to depart from the general rule.  I recommend that the court, in its discretion, decline to exercise supplemental jurisdiction.

-27-

**Recommended Disposition**

For the reasons set forth herein, I recommend that defendants' motions for summary judgment (docket #'s 12, 15, 17) be granted and that all plaintiff's claims be dismissed for lack of subject matter jurisdiction.  On an alternative basis, and in the order listed, I recommend that defendants' motions be granted and (1) that the court dismiss all plaintiff's claims on the basis of *Younger* abstention; or (2) that the court enter judgment in favor of defendants on all plaintiff's federal claims, and that the court, in its discretion, decline to exercise supplemental jurisdiction over plaintiff's purported state-law claims.


Dated:   February 27, 2008            /s/  Joseph G. Scoville
                                 United States Magistrate Judge


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *McClanahan v. Commissioner*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).